**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_____
Mary Ann Whipple
United States Bankruptcy Judge
(Successor Judge Docket)

**Dated: March 26 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | Case No: 12-32369 |
| ) | |
| Charles L. Tailford and ) | Chapter 7 |
| Patricia M. Tailford ) | |
| ) | Adv. Pro. No. 12-3144 |
| Debtors. ) | |
| ) | SUCCESSOR JUDGE |
| Martin A. Rambush, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| Charles L. Tailford, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on a complaint to determine dischargeability filed by the Plaintiffs, Martin and Kathleen Rambush.[1] The complaint is brought against the Defendants, Charles and Patricia Tailford, who are debtors in this court. As the basis for their complaint to determine dischargeability, Plaintiffs rely on Bankruptcy Code § 523(a)(2), which generally excepts

---

[1] Plaintiffs represented themselves at trial after the lawyer who filed the complaint on their behalf was permitted by the court to withdraw as counsel of record. [Doc. # 15].

from discharge any debt incurred by a debtor's fraudulent conduct.

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendants are entitled to judgment on the complaint in their favor.

## BACKGROUND

Defendants Charles and Patricia Tailford filed a joint petition in this court for relief under Chapter 7 of the United States Bankruptcy Code. In the bankruptcy schedules filed with their petition, Defendants listed on Schedule F a general unsecured debt owed by Charles Tailford, only, to Plaintiffs Martin and Kathleen Rambush ("Plaintiffs"). The amount of the debt was listed by Defendants as $23,000.00, with Defendants also disclosing that the basis for this claim is a state-court judgment. [Case No. 12-32369, Doc. # 1, p.25/54].[2]

At the trial held in this court, a copy of the state-court judgment was admitted into evidence. [Plffs. Ex. 2]. This document shows that on April 17, 2012, a consent judgment entry was entered in Plaintiffs' favor against Defendant Charles Tailford ("Defendant"), only, for the sum of $15,000.00, plus interest.[3] The terms of the judgment also provided certain conditions under which Plaintiffs would, in consideration for Defendant's timely payment of a lesser sum, consider the judgment fully satisfied. The conditions were not met and the judgment remains unsatisfied.

The circumstances giving to rise to the judgment stem from a construction contract between Plaintiffs and Defendant. Under their contract, Defendant agreed to build a garage on Plaintiffs' premises at 5132 Ottawa Road in Toledo, Ohio. Defendant, and assistants engaged by Defendant, commenced work on the construction project. During the initial phase of construction, before the concrete slab was poured,

---

[2] The court takes judicial notice of the contents of its case docket and the Defendants'/Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

[3] In their complaint in this court, Plaintiffs named both Charles and Patricia Tailford as Defendants. Patricia Tailford, however, was not a party to the state court action. Nor was any evidence offered at trial concerning allegedly fraudulent or any other conduct on the part of Patricia Tailford with respect to the events giving rise to the complaint. That is the basis for entry of judgment in her favor on Plaintiffs' complaint.

the project was inspected by Dennis Johnson of the City of Toledo Building and Inspection Department. Johnson testified that the City of Toledo issued a building permit for the project, as he would not have been called out to do an inspection had one not been issued. At that time, the ground was dug and the footers were in. He did not see any problem with the elevation, although there was dirt piled around and it would have been hard to tell if there was. Johnson stated that if he had seen any problems with the project, they would have been addressed. He did not. Johnson gave his approval for the project to proceed. The next step after Johnson inspected was to bring in the concrete for the floor.

Laying the concrete foundation for the garage was obviously a critical aspect of the project. Although Mr. Rambush testified that the finished garage looked great, two material defects emerged. First, cracks in the concrete later appeared, believed to be the result of a "hot load" of concrete being used for the job. [Plffs. Ex. 5]. Second, the foundation for the garage had a drainage problem, which Defendant does not deny. Eventually Defendant had his city contractor's license suspended for a period of 90 days because of the drainage and an elevation issue, there not being a 6 inch fall from the floor to the outside terrain as required by the City of Toledo building code. Plaintiffs' state court complaint, and the resulting consent judgment subsequently entered on that complaint, were predicated on these facts.

## LAW AND ANALYSIS

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under, arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Because this matter raises an issue concerning the dischargeability of a particular debt, this is a core proceeding that this court may hear and determine. 28 U.S.C. §§ 157(b)(1) and 28 U.S.C. §§ 157(b)(2)(I).

An individual debtor, such as Defendant, who seeks relief under Chapter 7 of the United States Bankruptcy Code does so with the aim of receiving "an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). The entry of a bankruptcy discharge generally enjoins any creditor holding a claim against a debtor from pursuing that claim against the debtor as a personal liability. 11 U.S.C. § 524(a). The discharge is intended to afford a debtor a fresh start, a core policy of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).

Other policy goals have given rise to certain categories of debts that are excluded from the scope of a Chapter 7 bankruptcy discharge. The types of debts not subject to the bankruptcy discharge are set forth

3

in § 523(a) of the Bankruptcy Code. Plaintiffs cite to paragraph (2) of § 523(a) as the statutory basis for their complaint to determine dischargeability. 11 U.S.C. § 523(a)(2).

The portion of § 523(a)(2) applicable in this matter provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

A creditor must prove exceptions to dischargeability for individual debts under § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. at 291. Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

To successfully sustain a nondischargeability action brought under § 523(a)(2)(A) as to false representations, a creditor must prove the following elements: (1) the debtor obtained money through a material representation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *In re Rembert*, 141 F.3d at 280-81 (citation omitted). If one or more of these elements are not established, a plaintiff's claim for nondischargeability will fail.

In *In re Rembert,* the Sixth Circuit Court of Appeals explained that a "finding that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law." 141 F.3d at 281 (citing *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285–86 (9th Cir. 1996)). The first and second elements of § 523(a)(2)(A), *supra*, go to the essence of actual fraud: that a person, acting with a culpable state of mind, deceives another. BLACK'S LAW DICTIONARY 660 (6th ed. 1990).

For purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). "'False pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express

misrepresentation." *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002)(quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

In addition, § 523(a)(2)(A) also addresses "actual fraud" as a concept broader than misrepresentation. *See McClellan v. Cantrell*, 217 F.3d 890, 892-93 (7th Cir. 2000); *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." *Vitanovich*, 259 B.R. at 877 (quoting *Gerad v. Cole (In re Cole)*, 164 B.R. 951, 953 (Bankr. N.D. Ohio 1993)).

A debtor's intent to defraud a creditor under § 523(a)(2)(A) is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id*.; *Rembert*, 141 F.3d at 281-82. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *See Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999). However, "[i]f there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *Buckeye Retirement Co., LLC v. Kakde (In re Kakde)* 382 B.R. 411, 427 (Bankr. S.D. Ohio 2008).

As the basis for their action under § 523(a)(2)(A), Plaintiffs generally allege that Defendant "intentionally defrauded Plaintiffs by accepting benefits that were never intended to be repaid by Defendants as demonstrated by Defendants' conduct." [Doc. # 1, ¶ 11]. And while Plaintiffs' complaint generally alleges fraud and fraudulent conduct, the only specific misrepresentations alleged in the complaint are that "Defendant was aware of the failure to pass inspection and intentionally continued to build the garage incorrectly," *Id*. at ¶ 13, and that Defendant was "lacking in capacity or intent to follow through with the intended sales of goods and services to Plaintiffs, including representations of being fully insured and bonded," *Id*. at ¶ 10.

The court finds from the record that the following facts are not in material dispute: (1) pursuant to the parties' agreement, Defendant commenced and then completed constructing a garage on Plaintiffs' premises; (2) at the beginning of the construction project, a city inspector gave his approval for the project to continue; (3) such approval would only have been given if Defendant was properly licensed to proceed with the project, there was a building permit issued and no problems were observed by the inspector; (4) defects exist with the completed garage, particularly with the foundation that has cracks and improper drainage; and (5) Defendant had his city contractor's license suspended for 90 days as the result of the work

he performed for Plaintiffs.

There are also disputed facts. Defendant testified that the parties immediately recognized the "hot load" of concrete, and that he offered to call the cement company and have another load delivered out, but that Mr. Rambush refused and insisted that the project proceed without delay. Mr. Rambush disputes the latter statement. The parties also disagree about whether an extended apron between the garage and a breezeway, which appears in Defendant's opinion to be a cause of the drainage problems, was part of the original contract and whether Defendant insisted to Mr. Rambush, which Mr. Rambush denies, that a French drain needed to be put in at a cost of an additional $1,000.00. The court adopts Defendant's version of these events as more credible, although it need not make a determination as to whether that part of the apron was in or out of the original contract. Regardless, Defendant included it in the pour; if there was a written contract, it is not in evidence. As to both issues, Mr. Rambush himself has an engineering background and appeared to the court at trial as very insistent on his way of doing things and knowing what was right. He also exhibited great impatience, with the project and overall, the latter of which is understandable from a lay person's point of view and the frustration with the bankruptcy process that this court often encounters in people and businesses who cannot collect debts as a result of bankruptcy.

As to the "hot pour" issue, all parties recognized and agreed that it was a "hot pour." But Mr. Rambush during trial also raised a suggested remedy, which tells the court that he did insist that the load be delivered instead of starting over with a new load. As Defendant testified, his contractor, Lonnie Allen, did the best he could with the "hot load" and that Mr. Rambush seemed pleased with it when it was finished.

Similarly as to the drain issue, Mr. Rambush stated emphatically at trial that no drain should have been necessary. The court therefore finds it likely that the parties discussed it, that Mr. Rambush in his own opinion did not think it was necessary and moreover did not want to incur the extra expense for installing the French drain. Thus, no drain was installed.

As to a cause of action for false misrepresentations, Plaintiffs have not proven the first *Rembert* element that Defendant obtained the contract proceeds through a material representation that, at the time, he knew was false or that was made with gross recklessness as to its truth. As to the insurance coverage issue, Plaintiffs allege that Defendant falsely represented that he was insured and bonded for the construction project. Defendant contested this averment, testifying that he had insurance while working on the garage project for Plaintiffs.

A misrepresentation by a contractor concerning the procurement of insurance may be a material

misrepresentation that may support a finding of nondischargeability under § 523(a)(2)(A). *In re Roggasch*, 494 B.R. 398, 408 (Bankr. E.D. Ark. 2013). The court has no corroborating evidence before it concerning whether the Defendant was insured or not while constructing Plaintiffs' garage. Notably absent from the evidence presented at trial was any writing evidencing the contract between the parties.

The lack of a written instrument makes it nearly impossible for the court to determine if any material misrepresentation was made by Defendant. This is because on the issue of insurance, the parties' disagreement appears to go to a level deeper than simply whether Defendant had insurance. Specifically, it appears to be Plaintiffs' position that Defendant had falsely represented that he had secured a performance bond that would reimburse Plaintiffs for any losses related to Defendant's failure to properly complete construction of the garage. By contrast, Defendant's representation concerning insurance appears to be simply that he held a general liability policy at the time he constructed Plaintiffs' garage.

The first rule in interpreting contracts is to effectuate the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898, 900 (1999). However, given the parties' differing, but reasonable belief as to the type of insurance Defendant would hold under the terms of their contract, the absence of a writing means that the true intent of the parties cannot be ascertained with any certainty. Consequently, as it is the Plaintiffs' burden to establish the existence of a fraudulent misrepresentation, the absence of a writing evidencing the parties' contract becomes fatal to the Plaintiffs' cause. *See In re Roggasch*, 494 B.R. 398 at 408 (testimony given that performance bonds not usually issued for home construction projects). Plaintiffs did not prove at trial that Defendant lacked insurance at the time he built their garage.

As to the averment that "Defendant was aware of the failure to pass inspection and intentionally continued to build the garage incorrectly," the only inspection about which there is specific evidence in the record is Dennis Johnson's testimony that he inspected the job before the concrete pour and that it did pass inspection. To the extent that it did not pass a subsequent inspection, after the garage was completed, which is not clear from the evidence but which the court can infer from the temporary suspension of Defendant's City of Toledo contractor's license, there is no evidence that Defendant knew or should have known at any point any time it would not pass inspection and continued ahead with the project anyhow. As to the concrete, the court has determined that Defendant offered and Mr. Rambush declined to have a new load delivered. And similarly as to the French drain issue in the extended apron, the court also finds that Mr. Rambush declined to have one installed. These is no evidence in the record one way or another that not installing one was against code. And as to the elevation fall issue, likewise there is no evidence in the record

showing that Defendant knew from the start that the elevation was incorrect and that he continued the project anyway to collect the contract proceeds. That it passed Johnson's inspection suggests otherwise.

As to the more general and cryptic averment that Defendant "intentionally defrauded Plaintiffs by accepting benefits that were never intended to be repaid by Defendants [sic] as demonstrated by Defendants' conduct," the court cannot connect this statement to evidence in the record and does not know what it refers to. The benefit that Defendant accepted from Plaintiffs was payment of the contract price, although there was a dispute as to whether it was all paid. Defendant ultimately acknowledged liability for repaying at least some part of the contract price in the consent judgment between the parties, which was admitted into evidence. But if this is what the averment refers to, there is no evidence that Defendant never intended to pay any of it, let alone evidence as to how Plaintiffs relied on any representation in that regard to their detriment and how any misrepresentations as to the consent judgment were the proximate cause of any loss suffered by the Plaintiffs.[4]

Lastly, Plaintiffs allege that Defendant was "lacking in capacity or intent to follow through with the intended sales of goods and services to Plaintiffs." This statement might reasonably be construed as invoking the broader concepts of "false pretenses" or "actual fraud" under § 523(a)(2)(A). But the bottom line is that the court cannot find from the record an intent or scheme to defraud Plaintiffs on Defendant's part in the overall circumstances of the project.

The facts identified above–that pursuant to the parties' contract Defendant commenced and then completed constructing a garage on the Plaintiffs' premises; at the beginning of the construction project, a city inspector gave his approval for the project to continue; and such approval would only have been given if Defendant was properly licensed to proceed with the project, there was a building permit issued and no problems were observed by the inspector-- negative an intent to defraud by Defendant. Rather, they show that at the onset of the project Defendant intended to perform his contractual obligation of building and completing a garage for Plaintiffs. The commencement and then completion of a construction project after obtaining initial inspection approval is hardly indicative of an intent to defraud. In this type of situation, it has been observed that:

---

[4]Plaintiffs cited the court to the Supreme Court's case *Archer v. Warner,* 538 U.S. 314 (2003), to the effect that the state court consent judgment should not be construed against Plaintiffs to wipe out their claims of nondischargeability based on fraud. The court does not so construe it. On the other hand, however, the state court judgment is also not entitled to preclusive effect in Plaintiffs' favor on any issue, as there is no evidence that the state court actually determined any facts in that proceeding, the parties having resolved the action by the agreement represented by the consent judgement.

> When dealing with construction contracts, . . . a determination [of fraud] can be necessarily surmised by ascertaining whether the contractor undertook any of the preliminary steps necessary to complete performance. Stated in another way, it is a reasonable inference that a contractor who intends to perform in accordance with his or her contractual obligations will, at the very least, take the initial steps to do so.

*Stifter v. Orsine (In re Orsine)*, 254 B.R. 184, 188-89 (Bankr. N.D.Ohio 2000); *see also Ewing v. Bissonnette (In re Bissonnette)*, 398 B.R. 189, 194 (Bankr. N.D. Ohio. 2008) ("as a general rule, the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud."). For this reason, the allegation of fraud raised by Plaintiffs, averring that Defendant never intended to follow through with the construction project, is not supported by the weight of the evidence.

Plaintiffs' allegations concerning Defendant's faulty construction of the garage and the failure of the garage to pass final inspection carry more weight when assessing whether Defendant acted with the intent to defraud Plaintiffs. These facts show that Defendant constructed a substandard garage, and that this deficiency was of a sufficient severity to cause Defendant to have his city contractor's license suspended. At the very least, such facts indicate that Defendant did not perform his services for Plaintiffs in a workmanlike manner, thus giving rise to a breach of his contract with Plaintiffs. *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294, 878 N.E.2d 66, 73 (Ohio App. 10th 2007) ("Ohio common law imposes upon builders and contractors a duty to perform their services in a workmanlike manner."). Indeed Defendant acknowledged this conclusion.

This acknowledgment is not fatal to Defendant's position. A fundamental principal of bankruptcy law is that a simple breach of contract does not equate to a nondischargeable debt for purposes of § 523(a)(2)(A). *See, e.g, In re Wiszniewski*, 2010 WL 3488960 (Bankr. N.D.Ill. 2010) ("Defendant's failure to install the new subflooring and generally complete the work according to standard practices may amount to a breach of contract, more than mere nonperformance is required to show a misrepresentation under section 523(a)(2)(A)."). Rather, as is the situation presented in this case, where the debtor completed the designated project, but did so in a substandard manner, the question of an intent to defraud turns on whether the debtor entered into the contract with the intent of never complying with its terms. *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 622 (Bankr. N.D.N.Y. 2010).

Plaintiffs' evidence does not support a finding that, insofar as the cracks in the foundation of the garage, Defendant acted with the requisite intent to defraud them. This conclusion rests on the fact that the cracks in the foundation were caused largely by a "hot load" of concrete being delivered to the work site, something Defendant neither planned nor caused. Moreover, credible evidence shows that Mr. Rambush

9

12-03144-ssj    Doc 29    FILED 03/26/14    ENTERED 03/26/14 15:39:55    Page 9 of 11

knew of the problem with the concrete, but authorized the use of the concrete anyways so as not to cause a delay in the garage construction project.

The drainage problem with the garage raises a closer question. Ohio's requirement that a contractor has a duty to perform services in a workmanlike manner implies that the work will be completed according to applicable building and zoning codes. *See* 3 Bruner & O'Connor Construction Law § 9:68. In such a situation, where a contractor knowingly fails to comply with applicable municipal code requirements, an inference of fraud can arise, particularly when coupled with additional corroborating evidence. *In re Evans*, 181 B.R. 508, 515 (Bankr. S.D. Cal. 1995). This is based upon the well-established principle that the concealment of a material fact can also form the basis for an actionable claim for fraud under § 523(a)(2)(A). *Bank of North Georgia v. McDowell (In re McDowell)*, 497 B.R. 363, 372 (Bankr. N.D. Ga. 2013)(citing *Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474 (11th Cir. 1985) ("Fraud may consist of silence, concealment or intentional non-disclosure of a material fact, as well as affirmative representation of a material fact.")).

As an initial matter, there is no evidence to show the court precisely how the finished project failed to comply with applicable building code requirements, other than general references to the six inch elevation fall in connection to the license suspension that happened after the fact.[5] Moreover, while Defendant certainly became aware at some point that the finished product did not comply with applicable building code requirements, as evidenced by the subsequent license suspension, there is no evidence as to when he knew that. Moreover, circumstances exist mitigating against any finding of fraud as to Defendant's actions. First, as the court determined above, the evidence in this case shows that Plaintiffs, particularly Mr. Rambush, were very involved in Defendant's construction of their garage, taking a hands-on and direct approach. This involvement of Plaintiffs in the garage project lends credibility to Defendant's statement at the trial that he informed the Plaintiffs of potential water drainage problems with the garage, but that such warnings were not heeded.

Mr. Rambush's close involvement in the project also lends credibility to Defendant's assertion that he was pressured to proceed with the project, despite the drainage issues. This conclusion was corroborated by Lonnie Allen, a former employee of Defendant's, who testified that Plaintiffs were constantly making changes to the construction contract. Particularly damaging to the notion that Defendant sought to actively

---

[5]Finding them hearsay, the court did not admit Plaintiffs' Exhibits 3 and 4, which consisted of letters and reports from other contractors who did not testify.

conceal a building code violation was the testimony of Mr. Rambush, who, when queried, explicitly stated that he did not believe that Defendant acted intentionally to cause him any "hurt or harm" with regards to the defects in the garage. Indeed, at trial, Mr. Rambush repeatedly used the word "negligently" in reference to Defendant and his work on the project.

Given this evidence, the court cannot conclude that Defendant sought to conceal from Plaintiffs the drainage defects in the garage project just to collect the contract price. In the absence of such concealment, there can be no finding that Defendant acted intentionally to defraud Plaintiffs. Thus, while Defendant built a garage that he believed might have drainage problems because of the lack of a French drain on the extended apron, Plaintiffs, having been informed of the potential problem, cannot claim that Defendant intentionally concealed from them any potential defects. Furthermore, Plaintiffs' knowledge of the potential defects negates any *prima facie* case that, as required to sustain an action under § 523(a)(2)(A), Plaintiffs relied on any representation or omission made by the Defendant concerning the drainage problem.

In sum, the evidence presented in this case shows that Defendant did not fulfill contractual duties to Plaintiffs in building Plaintiffs' new garage. Plaintiffs have proven a breach of contract case. They have not, however, met their burden of proving a fraud case by the preponderance of the evidence. The evidence presented at trial does not support a finding that Defendant intentionally sought to defraud Plaintiffs, whether based on false misrepresentations, false pretenses or actual fraud. Accordingly, Defendants are entitled to judgment in their favor on Plaintiffs' complaint pursuant to the statutory exception to dischargeability contained in § 523(a)(2)(A).

The court will enter a separate judgment in accordance with this Memorandum of Decision.

###

11

12-03144-ssj    Doc 29    FILED 03/26/14    ENTERED 03/26/14 15:39:55    Page 11 of 11